[Cite as *State v. Mynes*, 2013-Ohio-4811.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA3480 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| RICKEY T. MYNES, | : | |
| | : | **RELEASED: 10/25/13** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Richard M. Nash, Jr., Portsmouth, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Julie Cooke Hutchinson, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____

Harsha, J.

{¶1}   Rickey Mynes appeals his conviction for rape and argues that there was insufficient evidence to support his conviction; he also argues that his conviction is against the manifest weight of the evidence.  Specifically, Mynes claims that the state did not prove he purposely compelled the victim to submit by force or threat of force, as required by the statute.  However, the 17-year-old victim testified that she did not resist because of Mynes' size and fear that he would harm her.  There was also testimony that the victim is in special education classes and has a "very childlike" demeanor. Therefore, a rational trier of fact could have found that Mynes purposely overcame the victim's will by fear or duress due to his relative size, age and maturity level. Accordingly, there was sufficient evidence to convict Mynes of rape.  For the same reasons, his conviction is not against the manifest weight of the evidence, so we affirm his conviction.

### I. FACTS

**{¶2}** On the night in question, Mynes was staying overnight at his friend B.J.'s. house. When they arrived at the home, B.J.'s 17-year-old daughter, C.J., was doing her homework at the kitchen table; Mynes began helping with her homework. Shortly thereafter, B.J. and his wife went to bed in an upstairs bedroom. C.J.'s grandmother also lived in the house and she went to bed in a first floor bedroom. After finishing her homework C.J. went to sleep on a couch in the living room, while Mynes went to sleep on a couch in a second living room on the first floor. The state alleged that during the night Mynes sat down at the end of the sofa and began rubbing C.J.'s leg. Mynes then pulled down her pants and penetrated her with his finger.

**{¶3}** The state charged Mynes with one count of sexual battery and one count of rape. The case proceeded to a jury trial and at the close of the state's case Mynes made a Crim.R. 29(A) motion for judgment of acquittal. The court denied the motion and Mynes did not put on a defense. The jury found Mynes guilty of rape but not guilty of sexual battery. He now appeals his conviction.

### II. ASSIGNMENTS OF ERROR

**{¶4}** Mynes raises three assignments of error for our review:

1. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL.

2. APPELLANT'S CONVICTION FOR RAPE WAS AGAINST THE SUFFICIENCY OF EVIDENCE.

3. APPELLANT'S CONVICTION FOR RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### III. LAW AND ANALYSIS

#### A. Motion for Acquittal & Sufficiency of the Evidence

**{¶5}**    In his first and second assignments of error, Mynes argues that the trial court erred by overruling his Crim.R. 29(A) motion for judgment of acquittal and that there was insufficient evidence to support his conviction.  Because they are interrelated, we address Mynes' first two assignments of error together.

**{¶6}**    A trial court must order a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). Therefore, "[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."  *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.  And because Mynes moved for a Crim.R. 29(A) judgment of acquittal at the close of the state's case and did not put on a defense, there is no doubt that he has preserved the issue for appeal.  *See State v. Calloway*, 4th Dist. Ross No. 10CA3147, 2011-Ohio-173, ¶ 7 (principal opinion), ¶ 11 (Harsha, J., concurring in judgment only).  *See also State v. Burton*, 4th Dist. Gallia No. 05CA3, 2007-Ohio-1660, ¶ 31-32.

**{¶7}**    "A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law."  *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118.  "In reviewing such a challenge, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'"  *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, superseded by constitutional amendment on other grounds.  "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the

facts.'" *Hunter* at ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Accordingly, "a reviewing court is not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'" *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541(1997) (Cook, J., concurring).

**{¶8}** Mynes was convicted of rape in violation of R.C. 2907.02(A)(2), which states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Although he admits that the alleged sexual conduct occurred with the victim, Mynes contends that the state did not present sufficient evidence to show that he acted purposely and compelled the victim to submit by force.

**{¶9}** R.C. 2901.22(A) states that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." "Because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case." *Davis* at ¶ 22. Accordingly, the state may rely on circumstantial evidence to prove an essential element of an offense, as "[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks* at paragraph one of the syllabus.

**{¶10}** R.C. 2901.01(A) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." "A threat of force

can be inferred from the circumstances surrounding sexual conduct * * *." *State v. Schaim*, 65 Ohio St.3d 51, 55, 600 N.E.2d 661 (1992). "The state must present some evidence of force or compulsion in addition to the act of rape itself in order to sustain a conviction with the added element of force." *Burton*, 4th Dist. Gallia No. 05CA3, 2007-Ohio-1660, at ¶ 36, citing *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763 (1998).

{¶11} "'Force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988), quoting *State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985). "To determine whether a partial course of conduct enabled a perpetrator to overcome the victim's will by fear or duress, 'the question is not what effect such conduct would have upon an ordinary man but rather the effect upon the particular person toward whom such conduct is directed.'" *Burton* at ¶ 37, quoting *Tallmadge v. Robinson*, 158 Ohio St. 333, 109 N.E.2d 496 (1958), paragraph two of the syllabus. Thus, "[t]he force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *Eskridge* at paragraph one of the syllabus.

{¶12} Here, the state established sufficient evidence to show that Mynes purposely compelled the victim to submit by force or threat of force. B.J. testified that Mynes is 36-years-old and C.J. is 17-years-old. He has known Mynes for 20 years and Mynes has slept at his house "many times" before. B.J. also testified that C.J. attends the Scioto County Joint Vocational School and "is in special education classes * * * because she's slow." He explained that "she's not on the grade level of a normal child

her age," and does not drive because she has failed the written portion of the driving test three times.  He also testified that she is "very withdrawn" and "not outspoken."

{¶13}  C.J. testified that she thought of Mynes "as a brother" and "part of the family."  On the night in question, Mynes helped with her homework and then she went to sleep on the couch in the living room.  C.J. testified that she lay down on the couch around 12:30 a.m., and at the same time Mynes also went to sleep on a couch in a second living room on the first floor of the home.

{¶14}  Around 4:00 a.m., Mynes came into the living room where C.J. was sleeping.  He sat down on the end of the couch next to her feet and began rubbing her leg.  C.J. testified that she woke up "a little bit but not all the way," and then Mynes "just grabbed a hold of [her pants] and pulled them down."  He penetrated her with his finger, grabbed both her breasts and penetrated her digitally a second time.  C.J. testified that the penetration was painful.  When Mynes finished, he pulled up C.J.'s pants and began rubbing her leg again.  He then got up and went outside to smoke a cigarette.  When he returned inside, he used the bathroom and went back to sleep on the couch in the other room.  C.J. testified that she "rolled over and went back to sleep."

{¶15}  C.J. further testified that she did not want this to happen and did not consent to Mynes' actions.  C.J. explained that she did not say anything during the attack because she "was scared" and "afraid [Mynes] might hurt [her]."  She stated she was afraid because Mynes is "bigger" than her and she did not tell her father after the incident because she was worried that her father might hurt Mynes and she "didn't want [her] dad to go to jail."

{¶16} In addition, Laura Vestich, a registered nurse and sexual assault nurse examiner, testified that she examined C.J. after the incident and performed a rape kit on her. She described C.J.'s demeanor as "very childlike" and stated that C.J. "didn't have the maturity that a normal 17-year-old would." Jodi Conkel, a detective with the Scioto County Sheriff's Department, testified that during her investigation she learned that C.J. "made Fs, no As, no Bs" as a student at West High School, before transferring to the vocational school. Conkel also described C.J.'s demeanor as "very childlike" and stated that C.J. "couldn't grasp stuff." She explained that C.J. could not understand her regular form of questioning and she "had to like basically talk to [C.J.] as I would talk to a child."

{¶17} Thus viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that Mynes purposely compelled C.J. to submit by force or threat of force. C.J. testified that she did not resist because of Mynes' size and her fear that he might hurt her. C.J.'s father also testified that she is developmentally "slow" and very withdrawn. Both Vestich and Conkel testified that C.J. has a "very childlike" demeanor and Vestich testified that C.J. does not have the maturity level of an average 17-year-old. The evidence also showed that C.J. is in special education classes and has failed both her high school classes and the written portion of the driver's exam. From this evidence the jury could infer that her will was overcome by fear due to Mynes' relative size, age and maturity level. Mynes' intent to purposely violate C.J. can be inferred by the same facts, as "'[i]t is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990), quoting *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978).

{¶18}  Mynes relies upon *State v. Henry*, 3rd Dist. Seneca No. 13-08-10, 2009-Ohio-3535, to support his claim that the state did not prove he used force.  In that case the defendant, a large college wrestler, climbed into bed with the sleeping victim, a female college student, and attempted to digitally penetrate her five times.  Each time, she told the defendant "no" and removed his hand from between her legs.  However, he successfully penetrated her with his fingers three out of the five times.  The victim thought the defendant was her boyfriend and after the fifth time she became fully awake and realized it was the defendant.  She then put her feet against the wall and with her back against the defendant, pushed him off the bed in order to escape.  The principal opinion held that there was insufficient evidence to show that the defendant compelled the victim to submit by force or threat of force and reversed his conviction for gross sexual imposition.

{¶19}  Nevertheless, there was no majority in *Henry* and as the dissent recognized, "having been concurred with in judgment only, the lead opinion sets no precedent or binding rule of law beyond the impact upon the parties in this case." *Henry* at ¶ 42 (Shaw, J., dissenting).   More importantly based on the facts of the case, we find the dissent more persuasive.

{¶20}  In addition, the state cites *Burton*, 4th Dist. Gallia No. 05CA3, 2007-Ohio-1660, for the proposition that the mere manipulation of a sleeping victim's clothing to facilitate the assault is sufficient to establish the element of force in R.C. 2907.02(A)(2). *See Burton* at ¶ 38.  However, *Burton* is not controlling here, because as we have already discussed, there was evidence that C.J.'s will was overcome by fear or duress and this alone is enough to establish force under the statute.  Accordingly, we conclude

there was sufficient evidence to support Mynes' conviction of rape and we overrule his

first and second assignments of error.

B. Manifest Weight

**{¶21}** In his third assignment of error, Mynes argues that his conviction is also

against the manifest weight of the evidence because again the state did not prove he

acted purposely or used force to compel the victim to submit.

**{¶22}** "Although a court of appeals may determine that a judgment of a trial court

is sustained by sufficient evidence, that court may nevertheless conclude that the

judgment is against the weight of the evidence." *Thompkins*, 78 Ohio St.3d at 387, 678

N.E.2d 541 (1997). When considering whether a conviction is against the manifest

weight of the evidence, we must review the entire record, weigh the evidence and all

reasonable inferences, consider the credibility of witnesses and determine whether in

resolving conflicts in the evidence, the jury clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be reversed and a new trial

ordered. *Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, at ¶ 119.

Accordingly, the discretionary power to grant a new trial should be exercised only in

exceptional cases where the evidence weighs heavily against the conviction. *Id.*

**{¶23}** Admittedly, at times C.J. contradicted herself and she seems to have

become easily confused during cross-examination. However, credibility determinations

are largely the province of the jury. *See State v. Frazier*, 73 Ohio St.3d 323, 339, 652

N.E.2d 1000 (1995). Moreover, on redirect, C.J. cleared up many inconsistencies,

clarified that she did not want this to happen, and that she did not consent to Mynes'

actions. More importantly, throughout her testimony she stated that she did not say

anything during the attack because Mynes is bigger than her and she was afraid.  And as already noted, the evidence shows that Mynes, a 36-year-old, sat down on the couch while the victim, a 17-year-old special education student, was sleeping and began rubbing her leg.  And while she was still partially asleep, he pulled down her pajamas and penetrated her twice with his finger.  Taken together, these facts demonstrate that Mynes purposely compelled C.J. to submit by force or threat of force.  This is not an exceptional case where the evidence weighs heavily against the conviction.  Accordingly, we overrule Mynes' third assignment of error.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & *DeGenaro, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
       William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**

* M. Mary DeGenaro, from the Seventh Appellate District, sitting by assignment of The Supreme Court of Ohio in the Fourth Appellate District.